# United States District Court
## Western District of Virginia
### Harrisonburg Division

| | |
|---|---|
| **BETTY J. HESTER**, | Civil No.: 5:11cv00080 |
|     *Plaintiff*, | |
| v. | REPORT AND RECOMENDATION |
| **MICHAEL J. ASTRUE**, | |
| Commissioner of Social Security, | |
| | By:  Hon. James G. Welsh |
|     *Defendant,* | U. S. Magistrate Judge |

This civil action instituted by the plaintiff, Betty J. Hester, challenges the final administrative decision of the Commissioner of the Social Security Administration ("the agency") denying her claim of entitlement to a period of disability insurance benefits ("DIB") under Title II of the Social Security Act, as amended ("the Act"), 42 U.S.C. §§ 416 and 423. Jurisdiction of the court is pursuant to 42 U.S.C. § 405(g).

In her application and related submissions the plaintiff alleges a November 2, 2007 disability onset date due to "swollen lymph nodes, severe pain and swelling from [a] torn tendon in the left shoulder, back and arm, migraines, anxiety, [and] high cholesterol." (R.143-144,164). Her application was denied initially, on reconsideration, and again following an administrative hearing before an administrative law judge ("ALJ"). (R.17-32,33-65,66-86,91-97). At the hearing the plaintiff was present; she testified, and she was represented by counsel. (R33,38-48,87-90,133-140). Charles Cooke, M.D., testified as a medical expert, and Earl Glosser, Ph.D.,

1

testified as a vocational witness. (R.48-59,59-63.132). After the ALJ's issuance of his adverse hearing decision, the plaintiff's requested Appeals Council review. (R.11-13). Her request was denied (R.1-7), and the ALJ's written decision dated December 29, 2009 now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

The Commissioner has filed his Answer to the plaintiff's Complaint and has filed a certified copy of the Administrative Record ("R"), which includes the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. By Standing Order of referral (WDVa No. 2012-3), this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have filed cross-motions for summary judgment; each has filed a supporting memorandum of points and authorities (Dkt. nos. 21 and 24). No request was made for oral argument.

## I.     Summary Recommendation

On appeal the plaintiff argues the ALJ's finding that she possessed the residual functional capacity to perform a range of sedentary work was based on an erroneous rejection of treating source opinion evidence and on an erroneous assessment of her credibility. (Dkt. no. 21, pp. 5-8). Based on a thorough review of the administrative record and for the reasons outlined hereinafter, neither of these assignments of administrative error is meritorious. It is, therefore, RECOMMENDED that the Commissioner's decision be AFFIRMED, the Commissioner's motion for summary judgment be GRANTED, the plaintiff's motion for summary judgment be DENIED, and this cause STRICKEN from the docket of the court.

2

Case 5:11-cv-00080-MFU-JGW   Document 25   Filed 09/06/12   Page 2 of 14   Pageid#: 701

## II. Standard of Review

The court's review in this case is limited to determining whether the Commissioner's factual findings are supported by substantial evidence and whether they were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2$^d$ 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance" of evidence. *Laws v. Celebrezze*, 368 F.2$^d$ 640, 642 (4th Cir. 1966). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'" *Hays v. Sullivan*, 907 F.2$^d$ 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2$^d$ at 642). The court is "not at liberty to re-weigh the evidence . . . or substitute [its] judgment for that of the [ALJ]." *Johnson v. Barnhart*, 434 F.3$^d$ 650, 653 (4th Cir. 2005) (internal quotation marks omitted).

## III. Evidence Summary

### Work History, Vocational Profile and Activities

At the time the plaintiff alleges that her disability began, she was forty-three years of age.[1] (R.38,66,67,147,205). She attended school through the tenth grade, and her past relevant work was as a sample tester. (R.38,40,66,67,165,170). As performed this work would be classified as semi-skilled and exertionally light. (R.60-61,165).

---

[1] At this age the plaintiff is classified as a "*younger person*," and pursuant to the agency's regulations age is generally considered not to affect seriously a younger person's ability to adjust to other work. 20 C.F.R. §§ 404.1563(c) and 416.920(c).

According to the plaintiff, without assistance she is able to handle a range of daily activities, including self-care, driving, self-management of medications, household chores for her family, shopping, bill paying, cooking, cleaning and interacting with her family. (R.38,155-159). She is right-hand dominant and reported experiencing chronic "left arm, shoulder, back and neck" pain that was exacerbated with "any activity." (R.38-39,175). Additionally she reported that she had migraine headaches and that her pain medications made her "sleepy." (R.45-46).

## Medical History

In November 2007 the plaintiff underwent a simple a left-sided enlarged node dissection in her neck in order to remove a benign mass [2] that had been present for several years. (R.235-236, 247,264,269-274,291-294). Objectively, her surgical site healed well and without any complications. (R.259,261,267,269). Despite the plaintiff's repeated complaints to her treating physician (Stephen Keefe, M.D.) about significant ongoing post-operative left shoulder pain and swelling, multiple studies and clinical examinations (including *inter alia* an examination by Thomas McNamara, D.O., in December 2007 and a consultive second opinion by Paige Powers, M.D., in mid-January 2008) demonstrated no new lymph node disease (lymphdenopathy), no mass or point tenderness, no abscess or infection, no rotator cuff tear or other shoulder pathology, no crepitation or effusion, no neurologic abnormality of the left upper extremity, and only some limitation of motion and "mild" non-inflammatory swelling of the supraspinatus tendon in the left shoulder. (R.242-243,245-246,260-267,285,274,297-302,356-357,373,377,381,386-389; *see* R.49-53).

---

[2] Both pre-surgery and post-surgery tests were negative for lymphoma or other medically significant abnormality. (R.49-50,248,271,274,281-282,285,287-289,295-296,381).

4

Dr. McNamara described his December 2007 post-operative findings as "[not] anything unusual." (R,386-389). He re-prescribed an anti-inflammatory for the plaintiff's left shoulder swelling, and he advised her to follow-up with Dr. Keefe. (*Id.*) Similarly, Dr. Powers' second opinion examination in January 2008 disclosed no objective basis for the plaintiff's persistent pain complaints, and she recommended the plaintiff be referred for pain management follow-up and for continued physical therapy. (R.274).

On referral, the plaintiff was seen the following month by Victor Lee, M.D., for pain management. (R.458-460,507-509,562-564). He found the plaintiff to be "moderately distressed" and complaining of an acute and constant deep aching neck and supraclavicular pain. (R.458,562). She reported that physical therapy "seemed to make things worse" and heat and ice treatments were "not helping very much." (*Id.*). On examination Dr. Lee found the plaintiff's range of neck maneuvers to be "somewhat" limited due to "stiffness" but not to be pain provocative; he found her surgical site to be well-healed and benign appearing; he found "some numbness" above the surgical site but not to be particularly painful or dysesthetic; he recorded her reports of pain from her left shoulder to her left elbow; he noted that she was right hand dominant, and he described her pain syndrome as "atypical," "puzzling," and with "neuropathic features." (R.459,507,563). A pharmacological treatment regime that included an opioid, methadone, and amitriptyline at bedtime was initiated by Dr. Lee, and she was given samples of a topical anesthetic patch. (R.460,509,564).

In his office notes covering the ensuing twenty months, Dr. Lee generally described the plaintiff's condition as an "intractable neuropathic pain syndrome" that mostly involved the superficial cervical plexus. (R.462-467,507-519,521-527,550-552,555-610). His office notes

5

throughout this period document a treatment regime that was conservative and primarily pharmacological, [3] and they record his ongoing puzzlement about the source and nature of the plaintiff's pain. For example, in his efforts to diagnose the basis for the plaintiff's persistent pain complaints, Dr. Lee's office notes include a number of differential diagnoses, including neck and back of the skull (cervico-occipital) pain, left-sided neck and shoulder (cervico-brachial) pain, arm pain and numbness (sciatica), unspecified muscle pain (myalgia), an arthritic condition affecting the paraspinous tendons and ligaments (enthesopathy), left-sided headaches and, as noted on October 29, 2008 (R.518), his "suspicio[n]" of an "unusual variant form of regional pain syndrome type 1 or reflex sympathetic dystrophy."

## Opinion Evidence

Based on his review of the plaintiff's treatment record, including treating source records and her reported range of daily activities, on July 1, 2008 a state agency medical reviewer concluded the plaintiff retained the functional capacity necessary to perform work activity at a light exertional level [4] that required no reaching (including overhead) and only occasional climbing. (R.481-488). Following a separate review of the record, a state agency psychologist concluded that the plaintiff's anxiety disorder was a non-severe impairment and would not significantly impact her ability to engage in work-related activities. (R.489-501).

---

[3] As part of his treatment of the plaintiff, Dr. Lee also tried a series of trigger point injections, a left-sided stellate ganglion block, and between April and October 2009, he also gave the plaintiff a series of acupuncture treatments. (R.463-466, 516, 519,523, 556,566-591).

[4] "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § ' 404.1567(b).

In contrast, eight months later in his response to an insurance company form, Dr. Lee opined that the plaintiff was capable of living at home and caring for most of her personal needs but lacked the residual functional ability to perform work even at a sedentary exertional level.[5] (R.555-558,560). In this response to the insurance company, Dr. Lee described the plaintiff's condition as a complex regional (neck and left upper extremity) pain syndrome type 1 with subjective weakness and stiffness. (*Id*.). He reported that he was currently treating the plaintiff with multiple medications, including opioid therapy, and without reference to any specific objective diagnostic test results [6] he stated that such testing "somewhat" supported the plaintiff's subjective complaints. (R.556,558).

The record in this case also includes the hearing testimony of Charles Cooke, M.D., a rheumatologist. (R.48-59,132). *Inter alia* in his summary of the medical record, Dr. Cooke first noted it showed that "a great deal of attention" had been focused on the plaintiff's subjective complaints of chronic neck and left shoulder pain, which "sometimes [went] down to the upper part of the arm;" he specifically made reference to the fact that in November 2007 the plaintiff had undergone a left-sided enlarged node dissection and that the removed mass had been ultimately determined to be benign, and he explained the basis for his conclusion that the plaintiff's condition was not of listing-level severity. (R.49-50,52-53). Then, addressing the

---

[5] "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of standing and walking is often required in carrying out job duties, and jobs are classified as sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).

[6] MRIs of the brachial plexus and left shoulder in January 2008 showed enlarged lymph nodes in the left posterior cervical space that did not press on the nerve root tissue and only "mild" tendonitis without any evidence of either a rotator cuff tear or other shoulder pathology; CT scans on September 25 and November 16, 2007 and January 25, 2008 disclosed no more than "minimally enlarged" small (less than 1 cm each) lymph nodes "deep" and to the left of the stemoleidomastoid muscle. / (R. 50-51, 240-250). Additionally, extensive nerve conduction studies of the plaintiff's left upper extremity on January 29, 2008 disclosed no neurologic abnormality or cause for her pain complaints. (R.51,297-302).

diagnostic issues, Dr. Cooke explained that the clinical and diagnostic test results in the medical record did not support either a physical or clinical diagnosis. (R.50-54). In his professional opinion reflex sympathetic dystrophy ("RSD") was one of the possible causes which should be considered in an effort to make a differential diagnosis on the basis of the set of symptoms presented by the plaintiff; however, he "could not confirm that diagnosis' because her clinical profile was "atypical." (R.54).

## IV.  Discussion

### A.

In support of her claim of administrative error the plaintiff first argues that as the plaintiff's treating physician Dr. Lee's assessment of the plaintiff's residual functional abilities "should have been accorded controlling weight." (Dkt. no 21, pp. 5-7). This argument, however, fails to acknowledge the ALJ's consideration of Dr. Lee's opinion was in accord with his decisional obligation. [7] In expressing his disagreement with Dr. Lee's assessment of the plaintiff's functional abilities, the ALJ found these functional limitations to be "too restrictive" given the nature and extent of her symptoms and conservative treatment regime, to be unsupported by the diagnosis, and not to be either well-supported by medically acceptable clinical and laboratory diagnostic techniques or consistent with the other evidence. (R.24-27). Without serious question, these findings are supported by substantial evidence, and each is a sufficient basis for the ALJ's rejection of Dr. Lee's opinion.

---

[7]  "If the ALJ does not heavily weigh a treating physician's opinion, the ALJ must use a five-factor test that considers the length of the treatment relationship; the nature and extent of the treatment relationship; the supportability of the treating source's opinion; the consistency of the treating source's opinion; and whether or not the treating source is a specialist." *Bowers v. Astrue*, 2012 U.S. Dist. LEXIS 120124, *11 (WDVa. Aug. 24, 2012) (citing 20 C.F.R. § 404.1527).

8

Moreover, Dr. Lee's opinion is also subject to rejection on the basis of its check-style / fill-in-the-blank assessment form without any explanatory detail. As such it is not strong evidence of a disabling condition. *Mason v. Shalala*, 994 F.2$^d$ 1058, 1065 (3$^d$ Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.").

In addition, given the inherently subjective nature of the plaintiff's chronic pain syndrome, Dr. Lee's obvious reliance on the plaintiff's statements about her symptoms and limitations as the basis for his assessment, and the finding that the plaintiff's statement concerning the intensity, persistence and limiting effects of her condition were in part inconsistent with the record, the ALJ was fully justified in rejecting Dr. Lee's assessment. *See Meadows v. Astrue,* 2012 U.S. Dist. LEXIS 115150, *18 (WDVa. Aug. 15, 2012). Furthermore, to the extent Dr. Lee's opinion may be read to be a treating physician's opinion on the ultimate issue of disability, the ALJ is not required to give it any decisional weight. 20 C.F.R. § 404.1527(d)(1); SSR 96-5p.

In contrast, to the extent Dr. Lee's medical opinion addresses a medical issue, an assessment of function or other non-reserved issue, it can be neither disregarded nor given diminished decisional value without explanation. *See* 20 C.F.R. § 404.1527(c)-(d). Pursuant to 20 C.F.R. § 404.1527(f)(2)(ii), the ALJ must "explain in the decision the weight given to . . . any opinions from treating sources [or other sources] . . . who do not work for [the agency]." That is precisely what the ALJ did in this case. Based on a detailed review of the entire record, in all material respects the ALJ's assessment of what the plaintiff can still do, despite her limitations, is supported by substantial evidence.

9

**B.**

To the degree the plaintiff's second argument on appeal suggests that her statements about the debilitating nature of her pain and other subjective symptoms establish her disability, such statements are not, alone, conclusive evidence that she is disabled. 20 C.F.R. § 404.1529(a). Rather, "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." *Craig v. Chater*, 76 F.3d 585, 591-92 (4th Cir. 1995).

In its review of the ALJ's credibility determination, the court must also take note of the Fourth Circuit's requirement that great deference is to be given to the ALJ's determinations and assess them only as to whether they are supported by substantial evidence. *Eldeco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997). An ALJ's credibility determination, therefore, "should be accepted by the reviewing court absent exceptional circumstances." *Id*. (quoting *NLRB v. Air Products & Chemicals, Inc*., 717 F.2d 141, 145 (4th Cir. 1983); *see also Bieber v. Dep't. of the Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002) ("credibility determinations of an ALJ are virtually unreviewable on appeal"); *Pope v. U.S. Postal Service*, 114 F.3d 1144, 1149 (Fed. Cir. 1997) (reviewing courts "are not in a position to re-evaluate . . . credibility determinations, which are not inherently improbable or discredited by undisputed fact").

In the instant case this required deference to the ALJ's credibility determination compels a finding that as a whole the ALJ's credibility assessment is neither unreasonable nor contradicted by other findings made by the ALJ. Moreover, this determination that the plaintiff's subjective complaints were not fully credible is fully consistent with the decisionally required

10

two-step [8] assessment of credibility. 20 C.F.R. § 404.1529; Social Security Ruling ("SSR") 96-7p. Although the plaintiff argues the ALJ erred by "placing undue reliance" on her reported daily activities as the basis for his finding that her statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible, the ALJ's two-step credibility assessment amply demonstrates that this contention is without merit

At the first step, the ALJ determined that the plaintiff had sufficiently demonstrated medical impairments ("reflex sympathetic dystrophy, lymph node resection, migraine headaches, and atypical lymph nodes") (R.22), which were reasonably likely to cause pain and other subjective symptoms. 20 C.F.R. §§ 404.1529(b). At the second step, the ALJ then evaluated the intensity and persistence of her symptoms and determined whether the symptoms affected her capacity to work. 20 C.F.R. §§ 404.1529(c). In doing so, took the "entire record" into consideration (R.25), including *inter alia* the plaintiff's medically unsupported statements about having torn muscles and ligaments that were damaged during surgery and about developing scalp rashes and blisters due to RSD (R.26,41,45,208), her unsupported contention that she had to stop working because of left-sided benign lymph node surgical dissection (R.26,235), her choice of conservative pain management instead of surgery and physical therapy (R.25 26,43-44,56-57,240), the scope of her daily activities (R.26,155-159), the vague and indefinite nature of Dr. Lee's RSD diagnosis [9] (R.26,53-59), and the lack of objective medical support for Dr. Lee's opinion (R.27).

---

[8] The Fourth Circuit on multiple occasions has reaffirmed the two-step process outlined in *Craig v*. Chater, 76 F.3d 585, 594-595 (4th Cir. 1996), as the proper framework for making credibility determinations in Social Security cases. *See, e.g,. Fisher v. Barnhart,* 181 F. App'x 359, 363 (4th Cir. 2006); *Hines v. Barnhart,* 453 F.3d 559, 565 (4th Cir. 2006); *Johnson v. Barnhart*, 434 F.3d 650, 657-59 (4th Cir. 2005).

[9] As the medical expert noted in his hearing testimony "atypical" means "maybe it ain't this." R.59).

Having taken the entire record into "careful consideration" and applied the correct legal standard in his assessment of the plaintiff's credibility, the plaintiff's contention to the contrary is without merit and should be rejected.

### C.

As previously noted herein, it is not the province of a reviewing court to make a disability determination. The court's role is to determine whether the Commissioner's decision is supported by substantial evidence and, in this case, substantial evidence supports the ALJ's opinion.

The recommendation to affirm the Commissioner's final decision does not suggest that the plaintiff is totally free of pain and other subjective discomfort. The objective record, including the both the medical information and the scope of her activities, however, simply fails to document the existence of any condition which reasonably would be expected to result in total disability from all forms of substantial gainful employment. The ALJ's appropriately considered all of objective and subjective evidence in making his adjudication of the plaintiff's claim, and all facets of the Commissioner's final decision in this case are supported by substantial evidence. Therefore, the court is obligated to affirm the decision irrespective of the fact that others may have come to a different conclusion.

## V. Proposed Findings of Fact

As supplemented by the above summary and analysis and on the basis of a careful examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1. The Commissioner's final decision is in all respects supported by substantial evidence;

2. Commissioner's final decision gave the requisite consideration to the opinions of Dr. Lee, and the ALJ's determination of the decisional weight to give to Dr. Lee's opinion is supported by substantial evidence;

3. Commissioner's final decision gave the requisite consideration to the plaintiff's statements and testimony, and the ALJ's determination of her credibility is supported by substantial evidence;

4. Substantial evidence in the record supports the finding that through the decision date the plaintiff was not disabled within the meaning of the Act;

5. The plaintiff has not met her burden of proving a disabling condition on or before her date last insured; and

6. The final decision of the Commissioner should be affirmed.

## VI. Transmittal of Record

The clerk is directed to transmit the record in this case immediately to the presiding United States district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

## VII. Notice to the Parties

Both sides are reminded that, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties. A failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the

conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED: This 6th day of September 2012.

*s/ James G. Welsh*
United States Magistrate Judge